MANISH KUMAR (CSBN 269493)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
manish.kumar@usdoj.gov
Telephone: (415) 934-5300

Attorney for the United States

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JORGE WONG,<br><br>Defendant. | Case No. CR 4:11-00428 PJH<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1**<br><br>Date: December 15, 2017<br>Time: 3:00 p.m.<br>Court: Hon. Chief Judge Phyllis J. Hamilton |

The United States respectfully requests that this Court sentence defendant Jorge Wong to (1) serve five months of custody, based on the government's motion for a downward departure of 40 percent from the low end of the Guidelines range for substantial assistance, (2) serve three years of supervised release, and (3) pay a criminal fine of $4,000, a $100 special assessment, and no restitution.  This sentence is consistent with the parties' Fed. R. Crim. P. 11(c)(1)(A) and (B) plea agreement.

/ /

/ /

/ /

**BACKGROUND**

Defendant Jorge Wong participated in the Alameda County bid-rigging conspiracy while working for Golden Pinnacle, a real estate company owned by his uncle Jaime Wong.[1]  Golden Pinnacle bought and sold homes and offered property management services to clients. Defendant's responsibilities included conducting property research and attending the trustee sales to purchase foreclosed properties.  Presentence Report (PSR) ¶ 9.  When defendant was solicited to do a round, he would report this to his uncle over the phone, who would then make the decision whether to participate.  *Id.* ¶ 11.  In total, Golden Pinnacle purchased approximately one dozen properties pursuant to the bid-rigging conspiracy worth approximately $1.8 million and participated in roughly 85 rounds.  *Id.*

Describing his initiation into the conspiracy, defendant testified that he was approached by Al Florida and his associates and repeatedly exhorted to make a payoff.  *Id.* ¶ 10.  After consulting with his uncle over the phone, defendant agreed to make a $2,500 payoff.  Defendant testified regarding this encounter during the *United States v. Florida I* prosecution before this Court.

Defendant was truthful when he was first interviewed by the FBI in January 2011.  He provided an extensive account of the bid-rigging conspiracy to the interviewing agents that lasted approximately three hours.  He entered his original guilty plea to one count of bid rigging and one count of conspiracy to commit mail fraud in June 2011 pursuant to a Rule 11(c)(1)(B) cooperation agreement.  *Id.* ¶ 1.  On October 7, 2016, defendant's initial plea was withdrawn by stipulation, he entered a guilty plea pursuant to a revised plea agreement to the bid-rigging count only, and the government dismissed the mail-fraud count.

/ /

/ /

/ /

/ /

---

[1] Jaime Wong was sentenced to term of probation of three years with a special condition of eight months home confinement.  Amended Judgment, *United States v. Jaime Wong*, Case No. CR 4:11-00427 PJH, Doc. No. 54, at 2, 4.

1

# ARGUMENT

2

**A.      Sentencing Guidelines Calculations**

3

### 1.        Criminal History

4

In Paragraph 12 of the Plea Agreement, the parties agree that defendant's Criminal

5

History Category is determined by the Court.  The Presentence Report (PSR) calculates

6

defendant's Criminal History Category as I based on the lack of any criminal history.  PSR ¶¶

7

30-31.

8

### 2.        Offense Level

9

The PSR calculates the total offense level as 11, consistent with the plea agreement.  PSR

10

¶ 34.  This calculation includes a one-level increase to the base offense level of 12 for conduct

11

involving the submission of non-competitive bids, a two-level increase for a volume of

12

commerce exceeding $1 million, a downward reduction of two levels for minor role, and a

13

downward reduction of two levels for acceptance of responsibility.  U.S. Sentencing Guidelines

14

Manual ("U.S.S.G.") §§2R1.1(b)(1), 3B1.2(b), 3E1.1(a) (U.S. Sentencing Comm'n 2010).

15

Under the Sentencing Guidelines, an offense level of 11 and Criminal History Category

16

of I results in a sentence ranging from 8 to 14 months of imprisonment.

17

### 3.        Fine and Restitution

18

The PSR calculates a fine range of $20,000 and $92,500, consistent with the plea

19

agreement.  PSR ¶ 87; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the

20

volume of commerce, but not less than $20,000).  In Paragraph Nine of the plea agreement, the

21

government agrees to recommend a fine between $4,000 and $40,000.  For the reasons discussed

22

below, the government recommends a $4,000 fine.  The parties have agreed in Paragraph 11 of

23

the plea agreement that defendant does not owe restitution, since the payoffs were collected by

24

his employer.  PSR ¶ 66 (restitution not applicable in this case).

25

**B.      Basis for Downward Departure for Substantial Assistance**

26

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward

27

departure for substantial assistance to the investigation under the Rule 11(c)(1)(B) plea

28

/ /

agreement in this case.  The government recommends a 40 percent reduction from the low end of the Guidelines range of eight months, resulting in a sentence of approximately five months.

The first consideration is the timing of defendant's decision to plead guilty and cooperate. Defendant was among the very first individuals to agree to plead guilty and cooperate in the investigation, entering his first plea agreement in June 2011.  His plea therefore likely impacted the decision of dozens of others to also plead guilty and accept responsibility.

The government's recommendation is also based on the extent and value of the information provided by defendant during the investigation.  In addition to an unusually candid initial interview with the FBI, defendant participated in eight interviews with the government, in addition to trial preparation sessions.  During those interviews, defendant provided corroborating information regarding the operation of the conspiracy, authenticated round sheets and payoff records, and provided an account of conduct in furtherance of the conspiracy without equivocation.  Defendant's cooperation was especially valuable to the government because it was provided early in the investigation.

Finally, the downward departure recommendation reflects the trial testimony provided by defendant in the prosecution of the *Florida I* trial.  Defendant made himself readily available to the prosecution team to prepare for his testimony and met with the government for multiple preparation sessions for the *Marr* and *Florida* trials.  By all measures, his testimony was credible, accurate, and reliable, and had probative value in the trial and at sentencing.

For these reasons, a 40 percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

**C.     Sentencing Recommendation**

The government's recommendation of five months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553.  As the Court is well aware, the government believes the Court's sentence must reflect the seriousness of the offense, promote respect for the law, and the need to afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

/ /

However, an assessment of the history and characteristics of defendant should take into account certain mitigating factors previously identified by the Court for similarly situated individuals, including defendant's early decision to accept responsibility and cooperate in the investigation and his status as a first-time offender.  These factors have led the Court to impose probationary sentences for other defendants.

Additionally, with regard to the nature and circumstances of the offense, the government notes that the plea agreement reflects a downward adjustment for a minor role, based on defendant's more limited participation in the conspiracy at the direction of a family member. The government agreed to this adjustment in only a few of the related cases before this Court. The government's recommendation is intended to balance these facts against the seriousness of defendant's conduct.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court sentence defendant Jorge Wong to (1) serve five months of custody, based on the government's motion for a downward departure of 40 percent from the low end of the Guidelines range for substantial assistance, (2) serve three years of supervised release, and (3) pay a criminal fine of $4,000, a $100 special assessment, and no restitution.

Dated: December 12, 2017                             Respectfully submitted,

                                                     /s/ MANISH KUMAR
                                                     United States Department of Justice
                                                     Antitrust Division